THE READER'S DIGEST ASSOCIATION, INC., Appellant, vs.
GEORGE E. MAHIN, Director of Revenue, Appellee.

*Opinion filed January 28, 1970.*

SPRAY, PRICE, HOUGH & CUSHMAN, of Chicago, (ROBERT S. CUSHMAN and JEFFREY G. LISS, of counsel,) for appellant.

WILLIAM J. SCOTT, Attorney General, of Springfield, (FRANCIS T. CROWE and HERMAN R. TAVINS, Assistants Attorney General, of counsel,) for appellee.

Mr. JUSTICE KLUCZYNSKI delivered the opinion of the court:

Plaintiff, Reader's Digest Association, Incorporated, appeals from a judgment entered by the circuit court of Cook County striking its amended complaint. Plaintiff had sought to declare void and enjoin the collection of taxes assessed under the Illinois Use Tax Act (Ill. Rev. Stat. 1967, ch. 120, pars. 439.2 and 439.3) for sales to Illinois residents of books and phonograph albums made during the months of October, November and December, 1967. Both public revenue and constitutional questions are involved.

The facts as stated in the amended complaint are as follows: Plaintiff is a Delaware Corporation with office headquarters in New Castle, New York, and is not licensed

to do business in the State of Illinois. It does not have any office, sales house, warehouse, tangible property, real or personal, or any telephone listing in the State of Illinois.

Plaintiff publishes a monthly magazine known as "Reader's Digest" which is exempt from Illinois use tax. (See *Time Inc.* v. *Hulman,* 31 Ill.2d 344.) In addition to the magazine, plaintiff also publishes and sells books and phonograph albums. All orders for the books and albums are sent by mail to plaintiff's headquarters at Pleasantville, New York, and are accepted or rejected there. The books and albums cannot be purchased in Illinois and must be purchased on a cash basis. All books and albums sold by plaintiff are shipped to the purchaser by mail.

During 1967 plaintiff solicited orders for its books and albums through direct mail solicitation, newspaper and magazine advertisements and radio and television announcements. Plaintiff placed an advertisement in the Chicago Sun Times on February 5, 1967, and in various national magazines. On January 1, 2, 3 and 4, 1967, plaintiff advertised its books and albums in 305 radio and television announcements over Illinois stations. According to the plaintiff's brief, this was the extent of local advertising.

Plaintiff wholly owns two subsidiaries, Reader's Digest Sales and Services, Incorporated, and Reader's Digest Services, Incorporated, and holds majority interest in Quality School Plan, Incorporated. These three corporations are considered because defendant contends that their activities in Illinois subject the plaintiff to use-tax liability.

Reader's Digest Sales and Services, Inc., a Delaware corporation, is licensed to do business in the State of Illinois and has an office in Chicago, Illinois. Reader's Digest Sales and Services, Inc. was engaged in the business of door-to-door sale of phonograph record players and albums and also solicited advertising for plaintiff's "Reader's Digest" magazine on a contract basis. On August 1, 1967, Reader's Digest Sales and Services, Inc. discontinued the sale of record play-

ers and albums, but continues to solicit advertising for "Reader's Digest" magazine on a contract basis.

Reader's Digest Services, Inc., also a Delaware corporation, is not licensed to do business in Illinois and does not own any tangible property, real or personal in Illinois. It does have one salesman who resides in Illinois. This corporation publishes a monthly magazine known as the Educational Edition of Reader's Digest and also publishes school text books and educational materials. This magazine is also exempt from Illinois use taxes.

Quality School Plan, Inc., a Delaware corporation, is not licensed to do business in Illinois and does not own any tangible property, real or personal, in Illinois. It does have nine salesmen who reside in Illinois and solicit orders for the Educational Edition of Reader's Digest published by Reader's Digest Services, Inc. Fifty-one percent of this corporation is owned by the plaintiff.

Section 3 of the Illinois Use Tax Act (Ill. Rev. Stat. 1967, ch. 120, par. 439.3) imposes a tax "upon the privilege of using in this State tangible personal property purchased at retail * * * from a retailer." It also provides that the tax "shall be collected from the purchaser by a retailer maintaining a place of business in this State * * *." Section 2 defines a "Retailer maintaining a place of business in this State" as any retailer:

"1. Having or maintaining within this State, directly or by a subsidiary, an office, distribution house, sales house, warehouse or other place of business, or any agent or other representative operating within this State under the authority of the retailer or its subsidiary, irrespective of whether such place of business or agent or other representative is located here permanently or temporarily, or whether such retailer or subsidiary is licensed to do business in this State, or

"2. Engaging in soliciting orders within this State from users by means of catalogues or other advertising,

whether such orders are received or accepted within or without this State."

Defendant moved to strike and dismiss plaintiff's amended complaint, alleging (1) that the plaintiff placed advertising for the books and albums in a local newspaper and in local radio and television stations, and (2) that the subsidiaries and Quality School Plan, Inc. were present and carried on activities within the State. We consider first the activities of the plaintiff in local advertising.

While section 2 of the Use Tax Act holds liable for tax collection any retailer "engaging in soliciting orders within this State from users by means of catalogues or other advertising, whether such orders are received or accepted within or without this State," the paragraph must be construed in light of the United States Supreme Court decisions. As early as *General Trading Co.* v. *State Tax Com.* (1944), 322 U.S. 335, 88 L. Ed. 1309, 64 S. Ct. 1028, the court referred to local solicitation and advanced the notion that regular, continuous, persistent solicitation would provide a sufficient connection for tax liability. In *Scripto, Inc.* v. *Carson* (1960), 362 U.S. 207, 4 L. Ed. 2d 660, 80 S. Ct. 619, the court referred to the local solicitation of salesmen and upheld the application of the Florida use tax. However in these two cases both companies had salesmen or agents working within the State. Finally, in *National Bellas Hess* v. *Department of Revenue* (1967), 386 U.S. 753, 18 L. Ed. 2d 505, 87 S. Ct. 1389, the court upheld the distinction between "mail order sellers with retail outlets, solicitors, or property within a State and those who do no more than communicate with customers in the State by mail or common carrier as part of a general interstate business." (386 U.S. at 758, 18 L. Ed. 2d 510.) Considering the local advertising admitted in plaintiff's amended complaint, it is apparent that certain promotional benefits were derived throughout the year.

Defendant next contends that the activities and pres-

ence of plaintiff's subsidiaries and Quality School Plan, Inc. in this State subject plaintiff to use-tax liability. While section 2 of the Use Tax Act does include, within "a retailer maintaining a place of business in this State," any retailer "having or maintaining within this State, directly or *by a subsidiary,* an office, distribution house, sales house, warehouse or other place of business" (emphasis added), this section also must be construed in light of United States Supreme Court limitations. In *National Bellas Hess* the court required the presence of a retail outlet, solicitor, or property within the State to subject an out-of-State vendor to liability for use-tax collection. Plaintiff admits that Reader's Digest Sales and Services, Inc., solicits advertising in the State of Illinois for plaintiff's "Reader's Digest" magazine. But plaintiff argues that Reader's Digest Sales and Services, Inc., is an agent for the solicitation of advertising only and therefore it should not be considered a basis for taxing the sale of the books and albums. In *Nelson v. Montgomery Ward & Co.* (1941), 312 U.S. 373, 85 L. Ed. 897, 61 S. Ct. 593, the United States Supreme Court considered the validity of the Iowa use tax in relation to separate departments of Montgomery Ward. Respondent Montgomery Ward which had 29 retail stores in Iowa, argued that because its mail order business was separate and had no connection with that State, it was not liable for use-tax collection for its mail order business. The court held: "Some of respondent's employees are in Iowa representing it in the course of business which it is conducting pursuant to its permit to do business in that state. The fact that other of its employees who work in the mail order houses and handle the mail orders here involved are not in Iowa is wholly irrelevant. It does not permit respondent to escape the burden which Iowa has exacted as a price of enjoying the full benefits flowing from its aggregate Iowa business." (312 U.S. at 375.) Through its solicitors in the State of Illinois, plaintiff would be liable for use-tax collec-

tion on its magazine sales, absent its exemption. However, this exemption does not extend to other products, *i.e.*, books and albums, sold to Illinois residents. Considering the full benefits flowing to plaintiff's aggregate business from its resident solicitors and local advertising, we find without further examination of the other subsidiaries an adequate basis for use-tax liability.

For the foregoing reasons the judgment of the circuit court of Cook County striking and dismissing the amended complaint is affirmed.

*Judgment affirmed.*